UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRELL SIGGERS,

        Plaintiff,                            Case No. 19-CV-12521

vs.                                         HON. MARK A. GOLDSMITH

JOSEPH ALEX, et al.,

        Defendants.
_____/

**OPINION & ORDER
DENYING DEFENDANT JOSEPH ALEX'S MOTION FOR
PARTIAL RECONSIDERATION (Dkt. 92)**

      This case arises out of Plaintiff Darrell Siggers's 1984 conviction for first-degree murder of James Montgomery, for which he was subsequently exonerated. Siggers brought this civil rights action against multiple defendants involved with his prosecution and conviction. Defendant Joseph Alex—the police officer who investigated the murder—moved for summary judgment on several grounds, including qualified immunity (Dkt. 65). The Court granted Alex's motion as to all of Siggers's claims other than Siggers's Brady[1] claim to the extent that this claim is based on the theories that (i) Alex withheld a witness's (Gary Kelly's) statements regarding seeing a man with a rifle on the night of the murder, (ii) Alex withheld information that he eliminated Kelly's neighbor (Roy Garland) as the potential identity of the man whom Kelly saw, (iii) Alex withheld another witness's (Jack Fuqua's) statements regarding a potential alternative suspect (Toby Red), and (iv) Alex withheld information that he threatened Fuqua to not mention Red at trial. 9/24/21 Op. at 36 (Dkt. 89). The Court denied Alex's request for qualified immunity as to Siggers's surviving Brady claim, i.e., that Alex withheld the information regarding Kelly and Fuqua. Id. at

---

[1] Brady refers to Brady v. Maryland, 373 U.S. 83 (1963), in which the United States Supreme Court held that the Due Process Clause of the Fourteenth Amendment is violated when the prosecution withholds material exculpatory or impeachment evidence from a criminal defendant.

33–35. This matter is before the Court on Alex's motion for partial reconsideration (Dkt. 92). Specifically, Alex seeks reconsideration of the Court's denial of Alex's claim for qualified immunity. For the following reasons, the Court denies Alex's motion.[2]

## I. BACKGROUND

The factual background has been set forth in the Court's prior opinion, see 9/24/21 Op. at 2–6, and, therefore, it need not be reset in full here. In relevant part, Siggers, Red, Montgomery, and others attended a party at Christine Arnold's house on February 16, 1984. Id. at 2. Siggers contends that at some point that night, a scuffle broke out between Montgomery and Red. Id. (citing Pl. Statement of Additional Material Facts (SAMF) ¶ 3 (Dkt. 84)). After the scuffle, Siggers asserts, Red ran off and retrieved a rifle, used that rifle to shoot and kill Montgomery, and then went to the nearby home of Fuqua. Id. (citing SAMF ¶¶ 3–4, 9). Alex, on the other hand, contends that the scuffle that broke out was between Montgomery and Siggers. Id. (citing Def. Statement of Material Facts (SOMF) ¶ 2 (Dkt. 65)). According to Alex, after the scuffle, Siggers shot and killed Montgomery. Id. (citing SOMF ¶ 2). Siggers was tried and convicted for Montgomery's murder, id. at 3 (citing Order of Conviction and Sentence (Dkt. 65-1)); however, Siggers was later exonerated, id. at 5–6.

After his exoneration, Siggers brought this lawsuit, alleging that Alex facilitated Siggers's wrongful conviction by, among other things, withholding material exculpatory information pointing to the existence of an alternative suspect for Montgomery's murder: Red. Specifically, Siggers contends that Alex withheld information revealing that, before trial, Fuqua told Alex that on the night of the murder, (i) Red—whom Fuqua described as a "real light" African-American man—appeared at Fuqua's home carrying a rifle, and (ii) that Red told Fuqua that he had "just

---

[2] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to the motion, the briefing includes Siggers's response (Dkt. 100).

2

shot a mother-fucker for starting some shit at Christine's house." Id. at 4 (citing Fuqua 1st Dep. at 11–16 (Dkt. 84-8); Fuqua 2d Dep. at 63 (Dkt. 84-9)). Fuqua purportedly did not testify about Red at trial because Alex coerced Fuqua to not mention Red at trial. Id. Further, Siggers asserts, Fuqua's statements painting Red as the murderer are corroborated by additional evidence that Alex allegedly withheld: Kelly's statement that shortly after the murder, he saw a man (whom Kelly believed to be his white neighbor) carrying a long gun. Id. (citing Kelly Trial Test. at 108 (Dkt. 65-2); Field Notes (Dkt. 84-11)). Alex interviewed Kelly's white neighbor (Garland) and eliminated him as a suspect, thereby leaving Red (who, like the man Kelly saw, was light-skinned and was seen carrying a gun shortly after the murder) as a viable alternate suspect. Id. at 5 (citing Field Notes). According to Siggers, Alex also did not disclose his elimination of Garland as a suspect to the prosecutor.

In resolving Alex's motion for summary judgment, the Court determined that Siggers had established a material dispute of fact as to whether Alex withheld the following exculpatory evidence suggesting the existence of an alternative murder suspect (Red): (i) Kelly's statements and Alex's elimination of Garland as a suspect and (ii) Fuqua's statements and Alex's threat to Fuqua. Id. at 11–15, 17–19.

The Court then considered whether Alex was entitled to qualified immunity on this Brady claim. Regarding the first prong of the two-prong qualified immunity test,[3] the Court reiterated its holding that there is a factual issue as to whether Alex withheld Fuqua's statements regarding Red (an alternative suspect) and whether Alex coerced Fuqua to not mention Red at trial. Id. at 35. Because "'the legal question of qualified immunity turns upon which version of the facts one

---

[3] To determine whether a police officer is entitled to qualified immunity, courts apply a two-prong test: "(1) whether the facts, when taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right; and (2) whether the right violated was clearly established such that a reasonable official would understand that what he is doing violates that right." Mullins v. Cyranek, 805 F.3d 760, 765 (6th Cir. 2015) (punctuation modified).

3

accepts, the jury, not the judge, must determine liability.'" Id. (quoting Sova v. City of Mt. Pleasant, 142 F.3d 898, 903 (6th Cir. 1998); citing Heflin v. Steart Cnty., Tenn., 958 F.2d 709, 717 (6th Cir. 1992)). Regarding the second prong, the Court explained as follows:

> There is no doubt that today, it is clearly established that evidence of a legitimate second suspect is material, exculpatory evidence under Brady. See [Gumm v. Mitchell, 775 F.3d 346, 364 (6th Cir. 2014)]. However, the pertinent inquiry is whether this Brady obligation was clearly established in 1984. The Sixth Circuit has recognized that since 1964—well before Montgomery's murder in February 1984—it has been clearly established that police officers have a Brady-derived duty to disclose evidence to the prosecutor when the "exculpatory value" of the evidence is "apparent." See [Moldowan v. City of Warren, 578 F.3d 351, 382, 388 (6th Cir. 2009)]. Further, it was clearly established by 1984 that the exculpatory value of evidence suggesting the existence of an alternative suspect is apparent. See [Carrillo v. Cnty. of Los Angeles, 798 F.3d 1210, 1224–1225 (9th Cir. 2015)] (holding that it was clearly established—before a murder investigation began in January 1984—that withholding alternative[-]suspect evidence violates Brady). Likewise, it was clearly established by 1984 that "impeachment evidence, such as the fact that a witness was coerced into making a fabricated statement, qualifies as exculpatory." Jackson v. City of Cleveland, 925 F.3d 793, 824 (6th Cir. 2019) (holding that this was clearly established by 1975) (citing Giglio v. United States, 405 U.S. 150, 153–155 (1972)). Thus, a reasonable police officer in 1984 would have understood that he was violating Brady by withholding and suppressing alternative-suspect evidence from the prosecutor.

Id. at 34. Accordingly, the Court concluded that "genuine issues of material fact preclude granting Alex summary judgment based on qualified immunity." Id. at 35.

## II. ANALYSIS

Local Rule 7.1(h)(2) governs motions for reconsideration of non-final orders. As that rule states, such motions "are disfavored." E.D. Mich. LR 7.1(h)(2). Further, such motions can be brought only on the three grounds set forth in the rule. See E.D. Mich. LR 7.1(h)(2)(A)–(C). Alex bases his motion on the first ground—that "[t]he [C]ourt made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the [C]ourt at the time of its prior decision." E.D. Mich. LR 7.1(h)(2)(A). Specifically, Alex argues that the Court erred in finding that Siggers "satisfied his burden" of showing that Alex is

4

not entitled to qualified immunity for failing to disclose Kelly's statements,[4] because: (i) Siggers did not cite Gumm or Carrillo in his response to Alex's motion for summary judgment; (ii) the United States Supreme Court has "repeatedly rejected" the qualified immunity analysis used in Carrillo; (iii) a case cited by Carrillo, Tennison v. City & Cnty. of San Francisco, 570 F.3d 1078 (9th Cir. 2009), does not govern this case; (iv) Gumm is not controlling or persuasive; and (v) this case does not involve alternative-suspect evidence. Mot. at 1–9. The Court considers each argument in turn.

### A. Siggers's Citation of Authority

Alex argues that Siggers, as the plaintiff, "bears the burden of showing that a right was clearly established at the time of [the] . . . alleged injury." Id. at 2 (citing Barton v Martin, 949 F.3d 938, 950 (6th Cir. 2020)). Alex further argues that Siggers did not meet that burden because in his response to Alex's motion for summary judgment Siggers did not cite Carrillo—a case relied on by the Court in determining that it is was clearly established in 1984 that alternative-suspect evidence was material, exculpatory evidence under Brady. Id. at 3.[5]

It is true that a plaintiff bears this burden. But "[a]t the same time, because resolving whether the asserted federal right was clearly established presents a pure question of law, the [C]ourt is not aware of any reason it should not draw on its full knowledge of relevant precedent . . . rather than restricting its review to cases identified by plaintiff." Brown v. Grinder, 2019 WL 280296, at *15 (E.D. Cal. Jan. 22, 2019) (citing Elder v. Holloway, 510 U.S. 510, 514–516 (1994); Davis v. Scherer, 468 U.S. 183, 192 n.9 (1984)) (punctuation modified). Thus, even though Siggers did not cite Carrillo in his response brief, the Court did not "make a mistake" in considering Carrillo. See E.D. Mich. LR 7.1(h)(2)(A).

---

[4] Alex confines his arguments to Kelly's statements; he does not mention Fuqua's statements.

[5] Alex also argues that Siggers did not cite Gumm and that the Court relied on Gumm in reaching its holding. As explained below, the Court did not rely on Gumm.

5

## B. Carrillo

Next, Alex argues that the Court erred in relying on Carrillo because the Supreme Court has "repeatedly rejected" the qualified immunity analysis applied in Carrillo. Mot. at 3–6. To be clear, Alex does not argue that any Supreme Court case has directly overruled Carrillo. Nor would such an argument be accurate. Rather, Alex's point is that Carrillo's analysis does not comport with the Supreme Court's direction that courts should not "'define clearly established law at a high level of generality' for the purposes of qualified immunity." Id. at 4 (quoting Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018) (punctuation modified)).

Alex's argument is unconvincing. Carrillo expressly acknowledged the Supreme Court's admonition that "the right at issue cannot be defined at too high a level of generality" and confined its qualified immunity analysis within those bounds. Carrillo, 798 F.3d at 1124. As the Carrillo court correctly observed, an example that the Supreme Court has provided of defining a right at "too high a level of generality" in the Fourth Amendment context is the "'general proposition . . . that an unreasonable search or seizure violates the Fourth Amendment.'" Id. (quoting Ashcroft v. al–Kidd, 131 S. Ct. 2074, 2083 (2011)). The Carrillo court determined that the right involved there—for officers to disclose alternative-suspect evidence—is "significantly more specific" than the "extremely abstract right of freedom from unreasonable searches and seizures." Id. (punctuation modified). This is because "Brady defines the type of material the government is obligated to disclose concretely and specifically as favorable to the accused, either because it is exculpatory, or because it is impeaching." Id. (punctuation modified). Thus, "[u]nlike the broad touchstone of 'unreasonableness,' the contours of a defendant's right to Brady material are focused and clear." Id.

Alex also argues that Carrillo's qualified immunity analysis is flawed because the Carrillo court "did not identify any 'controlling authority' or 'robust consensus of persuasive authority' that squarely governed the facts of that case . . .," as required to show that a violated right was

6

clearly established at the time of the violation. Id. at 5 (quoting D.C. v. Wesby, 138 S. Ct. 577, 589–590 (2018)). While it is true that "a legal principle [has] . . . a sufficiently clear foundation in then-existing precedent" if the rule "is dictated by controlling authority or a robust consensus of cases of persuasive authority," Wesby, 138 S. Ct. at 589–590, it is not necessary that "the very action in question has previously been held unlawful," Anderson v. Creighton, 483 U.S. 635, 640 (1987). An allegedly violated right is clearly established if "in the light of pre-existing law," the unlawfulness is "apparent." Id. Carrillo concluded that the officers violated a clearly established right because the unlawfulness was apparent based on Brady. Specifically, the Carrillo court explained that "[i]n Brady itself," which was decided in 1963, "the [Supreme] Court considered the failure to disclose an accomplice's confession that he had committed the homicide for which he and the defendant were standing trial" and held that "suppression of this evidence violated due process." Carrillo, 798 F.3d at 1126 (citing Brady, 373 U.S. at 86).[6] Thus, "[a]ny reasonable police officer in 1984 would have understood that evidence potentially inculpating another person fell within Brady's scope." Id. Accordingly, the Carrillo court concluded, the officers' failure to "disclose evidence that another man who resembled the eyewitness description of the killer had previously tried to kill the victim" clearly violated Brady, as this evidence "'would tend to exculpate'" the defendant charged with murder. Id. at 1126–1127 (quoting Brady, 373 U.S. at 88).

Alex further attempts to cast Carrillo as bad precedent by arguing that Carrillo was "decided more than thirty years after the conduct at issue in this case." Mot. at 10. Alex thus suggests that because Carrillo was decided in 2010, it does not show that Alex's Brady obligation was established in February 1984, which is the "pertinent inquiry." 9/24/21 Op. at 34. Alex is mistaken. Although Carrillo was decided 2010, it did not announce a new principle of law. Rather,

---

[6] Although Brady involved prosecutors' withholding of exculpatory evidence, since 1964, it has been clearly established that police officers have a Brady-derived duty to disclose evidence to the prosecutor when the "exculpatory value" of the evidence is "apparent." See Moldowan, 578 F.3d at 382, 388.

7

it held that the exculpatory nature of alternative-suspect evidence was clearly established by the time that the murder investigation in that case began, January 1984. Carrillo, 798 F.3d at 1224–1225. This predated the murder investigation in this case, which began after the February 1984 shooting.

Because Alex is incorrect that Carrillo employed an impermissible qualified immunity analysis, he is not entitled to reconsideration on this basis.

### C. Tennison

As another basis for challenging the Court's reliance on Carrillo, Alex attacks Tennison, a case cited by Carrillo (but not by this Court's prior opinion). Specifically, Alex argues that Carrillo mistakenly relied on Tennison in concluding that the right at issue was clearly established in 1984. According to Alex, the reliance was mistaken because Tennison addressed whether alternative-suspect evidence was a Brady violation in 1990—six years before the investigation in this case. Mot. at 6.

Alex misrepresents the nature of Carrillo's citation of Tennison. Carrillo cited Tennison for the proposition that the right at issue should not be defined at too high a level of generality nor "'too narrowly,' either." Id. at 1224. Carrillo also noted that "[a]s in Tennison, law predating the investigations in both of these cases clearly established that the type of evidence allegedly withheld—including impeachment and alternative-suspect evidence—fell within Brady's scope." Id. at 1224–1225. In other words, Carrillo compared its case to Tennison's for the simple point that caselaw predating the investigation in Carrillo clearly established the rule at issue, just as caselaw predating the investigation in Tennison established the rule at issue there. Carrillo, therefore, did not rely on Tennison for the proposition that a reasonable police officer in 1984 would have understood that he was violating Brady by withholding and suppressing alternative-suspect evidence from the prosecutor. As a result, the fact that Tennison involved an investigation

8

that occurred in 1990 is immaterial and does not entitle Alex to reconsideration.[7]

### D. Gumm

Next, Alex charges that the Court relied on Gumm and that Gumm's qualified immunity analysis is flawed. Mot. at 7. However, the Court did not rely on Gumm in determining that a reasonable police officer in 1984 would have understood that he was violating Brady by withholding and suppressing alternative-suspect evidence from the prosecutor. Rather, the Court merely noted that "[t]here is no doubt that today, it is clearly established that evidence of a legitimate second suspect is material, exculpatory evidence under Brady." 9/24/21 Op. at 34 (citing Gumm, 775 F.3d at 364). The Court then immediately explained that although the right is clearly established today, "the pertinent inquiry is whether this Brady obligation was clearly established in 1984." Id. Because Alex is incorrect that the Court relied on Gumm in its discussion of the second prong of the qualified immunity analysis, this argument plainly fails to point to any "mistake" that the Court made. See E.D. Mich. LR 7.1(h)(2)(A).

### E. Alternative-Suspect Evidence

Finally, Alex argues that Kelly's statement—that shortly after the murder, he saw a man with light skin carrying a gun—is not alternative-suspect evidence. Mot. at 7. This is an impermissible attempt to use a motion for reconsideration to rehash an argument that the Court has already rejected. See Fischer v. United States, Case No. 1:19-cv-13020, 2022 WL 188126, at *1 (E.D. Mich. Jan. 19, 2022) ("A motion for reconsideration that merely reasserts the same facts and legal arguments previously asserted is not proper . . . .") (collecting cases); Saltmarshall v. VHS Children's Hosp. of Mich., Inc., 402 F. Supp. 3d 389, 393 (E.D. Mich. 2019) ("A motion for reconsideration is not intended as a means to allow a losing party simply to rehash rejected

---

[7] Alex also argues that Tennison "does not identify any controlling authority or robust consensus of persuasive authority that squarely governed Joseph Alex's alleged conduct in 1984." Mot. at 6. Given the limited purpose of Carrillo's citation to Tennison, Alex's argument, even if true, would not prove that the qualified immunity analysis used in Carrillo is flawed.

arguments or to introduce new arguments.") (citing Sault Ste. Marie Tribe of Chippewa Indians v. Engler, 146 F.3d 367, 374 (6th Cir. 1998) ("Thus, parties should not use [motions to reconsider] to raise arguments which could, and should, have been made before judgment issued.")).  As the Court noted in its prior opinion, Alex previously argued "that the allegedly omitted information was not exculpatory . . . ." 9/24/21 Op. at 13.  The Court rejected this argument, explaining that "Kelly's statements and Alex's elimination of Garland as the man whom Kelly saw are material because—when considered with Fuqua's statements about Red—this evidence points to Red as a legitimate, alternative suspect." Id.  The Court will not permit Alex a second bite at the apple.

### III.  CONCLUSION

For the foregoing reasons, the Court denies Alex's motion for partial reconsideration (Dkt. 92).

SO ORDERED.

Dated: February 16, 2022  
       Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge